IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

YU XUE,

                                    Defendant.

CRIMINAL ACTION
NO. 16-22-1

## OPINION

**Slomsky, J.**                                                    **August 1, 2018**

## I.      INTRODUCTION

On May 24, 2017, a forty-five count Superseding Indictment was returned against five Defendants, Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi.  (Doc. No. 125.)  Defendant Yu Xue is charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1); conspiracy to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5) (Count 2); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 3); wire fraud in violation of 18 U.S.C. § 1343 (Counts 4-19); and theft of trade secrets in violation of 18 U.S.C. § 1832(a) (Counts 20-22, 26-43, 45).  The charges stem from an alleged conspiracy to steal confidential and trade secret information from GlaxoSmithKline, LLC ("GSK") for the use of a rival corporation, Renopharma, Ltd., created in China.

Before the Court is Defendant Yu Xue's Motion to Dismiss for Prosecutorial Misconduct. (Doc. No. 181.)  In the Motion, Yu Xue argues that the Government indicted her brother, Gongda Xue, just weeks after her counsel informed the Government that she would be seeking a

deposition of him in Switzerland under Federal Rule of Criminal Procedure 15.[1]  (Id. at 1.)  Yu Xue asserts that by indicting Gongda Xue, the Government has intentionally deprived her of critically important exculpatory evidence and her constitutional right to present witnesses in her defense in violation of her right to due process.  (Id.)  She argues that this conduct, "aimed at distorting the fact-finding process and muting exculpatory testimony," amounts to prosecutorial misconduct.  (Id.)  The Government has filed a Response to the Motion.  (Doc. No. 182.)

On April 30, 2018, the Court held a hearing on all pretrial Motions, including the instant Motion to Dismiss.  After the hearing, the Government filed the Affidavit of Robert J. Livermore, Esquire, counsel for the Government (Doc. No. 187); Yu Xue filed a Reply (Doc. No. 192); and the Government filed a letter sur-reply (Doc. No. 193).  For reasons that follow, the Motion to Dismiss (Doc. No. 181) will be denied.

## II.   BACKGROUND

On December 29, 2015, the Government filed a Criminal Complaint against Defendants Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi charging them with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.  (Doc. No. 1.)  That same day, warrants for the arrest of Yu Xue and the other four Defendants were issued by a United States Magistrate Judge.  On January 5, 2016, Yu Xue was arrested, and on January 20, 2016, a grand jury returned a forty-three count Indictment against these Defendants, charging them with conspiracy to commit wire fraud, conspiracy to steal trade secrets, conspiracy to commit money laundering, wire fraud, and theft of trade secrets.  (Doc. No. 24.)

---

[1]   Rule 15 provides in pertinent part: "A party may move that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a)(1).

In his Affidavit, Robert J. Livermore, Esquire, counsel for the Government, states that Gongda Xue, brother of Defendants Yu Xue and Tian Xue, was not charged in this Indictment because the Government needed additional time to investigate the totality of his criminal conduct, including allegedly stealing confidential information from his employer in Switzerland, the Friedrich Miescher Institute for Biomedical Research ("FMI").  (Doc. No. 187 ¶ 5.)  The Government argues that in January 2016, it sent a Mutual Legal Assistance Treaty ("MLAT")[2] request to Switzerland to obtain additional evidence against Gongda Xue.  (Doc. No. 182 at 2.) On May 5, 2017, the Director of the Criminal Division of the Office of International Affairs in Switzerland responded to the request, providing additional evidence against Gongda Xue.  (Id., Ex. A.)  The Government alleges that some of this documentary evidence was written in German and had to be translated.  (Doc. No. 182 at 2.)

### A.     The Superseding Indictment

On May 24, 2017, a grand jury returned a forty-five count Superseding Indictment against the five Defendants, which included additional allegations.  (Doc. No. 125.)  The Superseding Indictment generally alleges that from 2010 to 2016, Defendants conspired to steal confidential and trade secret information from GSK and misappropriated thirty-six GSK documents containing confidential or trade secret information.  (Id. ¶¶ 25-60.)  It alleges that Defendants did so for the benefit of Renopharma, a company created in China to market, sell, and profit from the stolen GSK trade secret and confidential information.  (Id. ¶ 64.)

Although Gongda Xue is not named as a Defendant, the Superseding Indictment adds allegations regarding him.  He lives and works in Switzerland and is referred to as "Person 1."

---

[2]    MLATs are negotiated by the U.S. Department of State in cooperation with the Department of Justice between the United States and another country and "allow generally for the exchange of evidence and information in criminal and related matters."  2 U.S. Dep't of State, International Narcotics Control Strategy Report 20 (2012).

The Superseding Indictment alleges: "YU XUE e-mailed GSK trade secret and otherwise confidential information relating to a dozen or more products and numerous GSK processes from her GSK e-mail account to her personal account and then forwarded that trade secret information to defendants TAO LI, YAN MEI, Person 1, and others."  (Id. ¶ 10.)  The Superseding Indictment further states:

> During the offense conduct, Person 1 worked as a research scientist at an institute affiliated with multinational pharmaceutical company.  Defendant YU XUE sent Person 1 trade secret and confidential information belonging to GSK.  In return, Person 1 provided defendant YU XUE with confidential information belonging to the institute and otherwise assisted defendant YU XUE with RENOPHARMA.  TAO LI and YAN MEI sent Person 1 antibody samples to test on behalf of RENOPHARMA.  Person 1 sent information and research, including test results of antibody samples, to defendants TAO LI and YAN MEI in China to assist RENOPHARMA.

(Id. ¶ 17.)  In response to an email from Yu Xue to Gongda Xue describing Renopharma, "Person 1 asked, 'I have a question for you and the company in China: who is the real and practical owner?  I mean the person who has the absolute control of this company?  Do you have shares sorted out?'"

(Id. ¶ 23.)

> As part of the Manner and Means of the conspiracy, moreover, the Superseding Indictment alleges:

> Defendant YU XUE also secured the assistance of Person 1, who was a scientist working at an institute in Switzerland.  Defendant YU XUE sent Person 1 GSK trade secret and confidential documents.  Person 1 provided defendant YU XUE with confidential scientific documents from his institute.   Person 1 also assisted defendants YU XUE, TAO LI, and YAN MEI by, inter alia, testing antibody samples sent to him from RENOPHARMA and associated companies in China.

(Id. ¶ 66.)

Included as Overt Acts in furtherance of the conspiracy, the Superseding Indictment alleges:

> 1.  On or about November 9, 2010, Person 1 sent an e-mail to defendant YU XUE which stated: "I attached three files: application, manuscript and an article which may help you.  The first two files are highly confidential!  you should NOT show to another person."  That e-mail further stated, "Once again, the frist [sic] two files are highly confidential.  You do not need to find out an excuse or reason to work on it or speak about it in public WITHOUT MENTIONING anything related to our lab or institute.  In the supplementary part of my manuscript, I listed the literatures

publishing Twist, you may say that you start from those published data, blah, blah blah . . . . You better forward this e-mail to your private email address and delete."

2. On or about November 9, 2010, Person 1 sent an e-mail to defendant YU XUE which stated, "do not call me at work, there are some new chinese students now.  you can call me at home today."

3. On or about December 17, 2010, Person 1 sent an e-mail to defendant YU XUE with information about the role and mechanism of MerTK receptor in human cells, including the fact that MerTK is overexpressed in certain forms of cancer.

4. On or about December 27, 2010, Person 1 sent an e-mail to defendant YU XUE which contained additional information about MerTK.

5. On or about March 5, 2011, Person 1 sent an e-mail to defendant YU XUE with an attachment which contained information regarding a scientific discovery in anti-cancer drugs.

6. On or about March 6, 2011, defendant YU XUE e-mailed from her personal e-mail account to her GSK e-mail account the attachment which Person 1 sent to her the previous day.  Defendant YU XUE modified the attachment to list herself as the author of the attachment.

(Id. at 27 ¶¶ 1-6 (alteration and omission in original).)

The Superseding Indictment further alleges that on or about April 11, 2013, Gongda Xue sent an email to Yu Xue stating, "Dayu, I got more striking results today.  I inhibits autophagy in melanoma cells with MerTK depletion and cells start to die; I treat melanoma cells with BRAF inhibitor and autophagy inhibitor cell start to die!  Keep confidential please."  (Id. at 35 ¶ 37.)  It also alleges that on November 8, 2013, Yu Xue sent Gongda Xue an email containing a portion of Document Z[3] and an email containing Document TL-5[4] as an attachment.  (Id. at 36 ¶¶ 44-45.)  The Superseding Indictment states that on March 3, 2014, Yu Xue sent Gongda Xue an

---

[3]   Document Z is a Power Point slide authored by Yu Xue titled "Structure, Computation, and Biopharmaceuticals."  (Doc. No. 125 at 13 ¶ 29.)  It contains GSK's logo and a summary of Yu Xue's biopharmaceutical research for GSK.  (Id.)

[4]   Document TL-5 is a forty-two page GSK document titled "Structure, Computation, and protein therapeutics" authored by Yu Xue.  (Id. at 20 ¶ 51.)

email with Document U[5] as an attachment, an email with Document W[6] as an attachment, and an email with Documents X-1, X-2, X-3, X-4, X-5, X-6, and X-7[7] as attachments.  (Id. at 38 ¶¶ 56-58.)  Finally, it alleges that throughout September and October 2014, Yu Xue and Gongda Xue sent various emails to each other discussing research, sharing findings, and arranging for certain Renopharma monoclonal antibodies to be sent to Gongda Xue in Switzerland.  (Id. at 39-41 ¶¶ 66, 68-70, 73-77, 79.)

### B.    Events Following the Grand Jury's Return of the Superseding Indictment

Yu Xue asserts that after the Superseding Indictment was returned on May 24, 2017, her counsel spoke with Gongda Xue about the allegations.  (Doc. No. 181 at 3.)  Gongda Xue explained to Yu Xue's counsel that when the alleged events occurred, he was a researcher at the independent Swiss institute, FMI, and had no involvement with Renopharma.  (Id.)  He clarified that the "confidential" document he sent to Yu Xue was a manuscript he had written but had not yet published, that he sent it to her for her input and comments, and that he did not want her to share it with anyone because it was not yet published.  (Id.)

Gongda Xue stated that the documents Yu Xue sent to him were to help him prepare for a possible job interview in the United States and that after he opened one of the documents and saw that it was beyond his understanding, he did not open the other documents or forward them to anyone else.  (Id.)  He explained that the monoclonal antibodies sent by Renopharma to him for testing were sent for his benefit rather than for the benefit of Renopharma.  (Id. at 3-4.)  He

---

[5]    Document U is a GSK Power Point presentation titled "An Introduction to Microbial & Cell Culture Development."  (Id. at 15 ¶ 35.)

[6]    Document W is a GSK Power Point presentation training lecture titled "An Introduction to Downstream Processing & Downstream Process Development (DPD)."  (Id. ¶ 36.)

[7]    Documents X-1, X-2, X-3, X-4, X-5, X-6, and X-7 are other GSK documents and Power Point presentations.  (Id. at 16-18 ¶¶ 37-43.)

stated that Yu Xue had asked Renopharma to send them to see if they could support Gongda Xue's research, and when the samples failed to do so, he returned the unused samples and discarded the rest.  (Id. at 4.)  Gongda Xue stated that none of these alleged activities was done with the intention of helping Renopharma.  (Id.)

On August 15, 2017, counsel for Defendants met with the Government and presented a detailed explanation of why the Government's theory of prosecution was "fatally flawed."  (Id. at 2.)  A large part of the presentation focused on showing that the Government had misinterpreted the emails between Yu Xue and Gongda Xue, and that Gongda Xue had no involvement in the alleged conspiracy.  (Id.)  Counsel for Defendants shared all of the above information about Gongda Xue with the Government.  (Id. at 4.)  Yu Xue argues that the presentation established that all of the counts involving Gongda Xue had no basis in fact but that the Government gave no response to the presentation.  (Id. at 2.)

On January 23, 2018, the Federal Bureau of Investigation ("FBI") and Government counsel met with Scott Brown, General Counsel for Novartis Institute for Biomedical Research, which is the company that controlled the intellectual property rights for FMI, the Swiss institute where Gongda Xue worked during the relevant period.  (Doc. No. 182, Ex. B at 1.)  Brown stated that Gongda Xue worked on the human cell receptor, MerTK, while at FMI, specifically on "how to turn off the protein in cancer cells so that cancer cell would in turn die."  (Id. at 3.)  Novartis declined to exercise its right to license the MerTK research Gongda Xue had done.  (Id.)

Brown informed the FBI and Government counsel that some antibody samples were sent from China to Gongda Xue at FMI, and that Gongda Xue apparently tested them, emailed the results back, and destroyed the samples.  (Id.)  Brown surmised that Gongda Xue was used for analysis of the samples since he had access to certain equipment at his lab.  (Id.)  Although

Brown stated that this conduct is a violation of company policy, he does not consider using company equipment to be "stealing."  (Id.)  Brown also confirmed that Renopharma sent Gongda Xue five milliliters of PDL1 and PDL2 antibodies, but Brown did not believe that FMI was doing much work on these antibodies at the time.  (Id.)  And Brown stated that in 2010, Gongda Xue sent Yu Xue the application, manuscripts, and article for "Twist," which is another regulator in cancer cells.  (Id.)  At the time, the manuscripts had not been published but eventually were published.  (Id.)  Brown confirmed that Twist is a different type of product than MerTK.  (Id.)

The Government states that after meeting with Brown, Government counsel began to draft the indictment of Gongda Xue and that on February 13, 2018, Government counsel emailed the FBI case agent, Andrew A. Haugen, to inquire about his availability to testify before the grand jury in March 2018.  (Doc. No. 182 at 3.)  The email provides:

> Andy:
>
> What does your schedule look like in March?  Would you be available to come up to testify on a Wednesday to get Gongda indicted?
>
> -Rob

(Id., Ex. C.)  Government counsel and Haugen then emailed back and forth, discussing potential dates for Haugen to testify before the grand jury and how long he would be required to testify. (Id.)  On February 26, 2018, Government counsel sent Haugen an email stating, "Let's plan for 3/28."  (Id.)  That same day, counsel for the Government sought to schedule Gongda Xue's indictment for March 28, 2018 with the U.S. Attorney's Office grand jury coordinator (id., Ex. D) and began to seek the necessary approvals for the indictment (id., Ex. E).[8]

---

[8]   In his Affidavit, Mr. Livermore, counsel for the Government, states:

> After this meeting [referring to the January 23, 2018 meeting with Brown], I began to draft the 52-page indictment for GONGDA XUE.  On February 13,

On February 28, 2018, counsel for Yu Xue sent an email to Government counsel, informing him that Yu Xue would be seeking a deposition of Gongda Xue under Federal Rule of Criminal Procedure 15.  (Id., Ex. F.)  The email reads in pertinent part as follows:

> [P]erhaps you can advise me, if you know, of the government's position on the necessity of taking the deposition of Gongda Xue.  We are going to propose a Rule 15 deposition for him, based on his unwillingness to travel to the US due to his perceived legal jeopardy here.  Would the government permit him to have safe passage to/from the US for him to testify at trial?  If not, then we have to go to Rule 15.  Pls let me know your thoughts on this.

(Id.)  Government counsel replied, "Hmmm.  Interesting.  Never thought about that.  Let me mull it over and I will get back to you tomorrow.  As you know, the Swiss can be prickly."  (Id.)

The Government alleges that on March 2, 2018, Government counsel and counsel for Yu Xue had a telephone conversation about a potential Rule 15 deposition of Gongda Xue.  (Doc. No. 182 at 4.)  The Government states that during the telephone conversation, Government counsel "was receptive to the idea of a Rule 15 deposition but insisted that Gongda Xue obtain legal advice from a U.S. criminal defense lawyer before agreeing to proceed with a Rule 15 deposition," and that counsel for Yu Xue agreed.  (Id.)  The Government alleges that counsel for the Government stated during this conversation that "he did not want to use the threat of criminal prosecution of Gongda Xue as a 'sword' to prevent Gongda Xue from testifying."  (Id.)

---

2018, I contacted FBI Special Agent Andrew Haugen to inquire about his availability to testify before the grand jury in March 2018.  On February 26, 2018, we agreed that March 28, 20l8, would work best for our respective schedules.  On February 26, 2018, I scheduled the GONGDA XUE indictment for March 28, 2018 with the U.S. Attorney Office's grand jury coordinator. Also on February 26, 2018, I began to seek the necessary approvals for the indictment within the U.S. Attorney's Office and the applicable Department of Justice component.  By that point, the first draft of the indictment was already completed.   All of these actions occurred before defense counsel first suggested a possible Rule l5 deposition for GONGDA XUE.

(Doc. No. 187 ¶ 8 (footnotes omitted).)

On March 5, 2018, Defendants jointly filed a Motion to take the deposition of Gongda Xue in Switzerland under Rule 15.  (Doc. No. 161.)  On March 28, 2018, a grand jury returned a twelve-count indictment against Gongda Xue, alleging the same facts that were alleged in the Superseding Indictment.  (Criminal Action No. 18-122, Doc. No. 1.).  The Government states that it intentionally did not seal the indictment so that it could be shared with counsel for Defendants in this case.  (Doc. No. 182 at 4-5.)  That same day, after the indictment was filed, Government counsel sent an email to counsel for Defendants, which stated:

> The grand jury indicted Gongda Xue today.  I intentionally did not seal it because I want Mr. Xue to understand how the government views his criminal conduct and the allegations against him.  I did not want to have another awkward conversation with you, or worse, the court, when I am dancing around my Rule 6(e)[9] obligations.  Mr. Xue can now make an intelligent and informed decision as to whether he would like to participate in a Rule 15 deposition rather than guessing at the government's intentions.

(Id., Ex. G.)  Yu Xue asserts that as a result of the indictment, counsel for Gongda Xue has indicated that he has advised Gongda Xue not to participate in a deposition.  (Doc. No. 181 at 2.)

> In his Affidavit, Mr. Livermore, counsel for the Government, states:

> I have never threatened, and to my knowledge, no one from the government has ever threatened GONGDA XUE with criminal prosecution to dissuade or discourage him from participating in a Rule 15 deposition on behalf of Yu Xue.  I believe that a Rule 15 deposition of GONGDA XUE is in the best interest of the government in order to gather additional evidence of GONGDA XUE's and his co-conspirators' criminal conduct.  I have done, and I will continue to do, everything I can to facilitate such a Rule 15 deposition.  In all my years as a federal and state prosecutor, I have conducted and will continue to conduct myself in an ethical and professional manner.  Gongda Xue was indicted for only one reason—he committed serious criminal conduct as charged in the indictment and it is my job to bring him to justice for those crimes.

(Doc. No. 187 at 8-9.)

---

[9]   Federal Rule of Criminal Procedure 6(e) provides that "an attorney for the government" "must not disclose a matter occurring before the grand jury."  Fed. R. Crim. P. 6(e)(2)(B)(vi).

III.    **ANALYSIS**

Defendant Yu Xue moves to dismiss the charges against her in the Superseding Indictment because she alleges that the Government has engaged in prosecutorial misconduct by indicting her brother, Gongda Xue, weeks after her counsel informed the Government that she would be seeking a Rule 15 deposition of him in Switzerland.  She argues that in doing so, the Government intentionally deprived her of exculpatory evidence and her constitutional right to present witnesses in her defense, in violation of her due process rights.  The Government responds that it did not engage in prosecutorial misconduct but instead had planned to indict Gongda Xue before Yu Xue's counsel first raised the possibility of a Rule 15 deposition.  The Government argues that it did not threaten Gongda Xue or indict him to prevent him from participating in a Rule 15 deposition or from testifying as a witness at trial.  Rather, the Government asserts that it indicted Gongda Xue because he committed federal crimes.

Both the Fifth Amendment right to due process and the Sixth Amendment right to compulsory process "insure a defendant the right to present a defense" at trial.  Gov't of V.I. v. Mills, 956 F.2d 443, 445 n.4 (3d Cir. 1992) (quoting United States v. Ismaili, 828 F.2d 153, 171 n.4 (3d Cir. 1987) (Becker, J., dissenting)).  Between the two rights, there is "little, if any, difference in the analysis."  Id.  In Washington v. Texas, the Supreme Court explained the right to present a defense as follows:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

388 U.S. 14, 19 (1967).

But where the actions of the prosecution have interfered with a defendant's right to present a defense, the prosecution may have engaged in prosecutorial misconduct.  The Third Circuit has stated that a defendant asserting a prosecutorial misconduct claim has the substantial burden of showing "that the government's decisions were made with the deliberate intention of distorting the judicial factfinding process."  United States v. Herman, 589 F.2d 1191, 1204 (3d Cir. 1978).  As the Third Circuit explained in United States v. Quinn,

> This deliberate distortion test applies when the Government has taken steps to interfere with the testimony of a witness who would otherwise be available to the defense.  For example, the prosecution has engaged in misconduct if the defendant can show that the Government's "[i]ntimidation or threats . . . dissuade[d] a potential witness from testifying"—that is, "the [G]overnment's conduct . . . 'substantially interfered' with a witness's choice to testify."

728 F.3d 243, 258 (3d Cir. 2013) (en banc) (alterations and omissions in original) (quoting Lambert v. Blackwell, 387 F.3d 210, 260 (3d Cir. 2004)).  "Whether substantial interference occurred is a factual determination."  Lambert, 387 F.3d at 260.

A showing of specific intent on the part of the government to interfere with a defendant's right to present a defense is not required.  Quinn, 728 F.3d at 260.  Instead, the focus is on "the effect of the prosecutor's actions on the process afforded to the defendant."  Id.  Although "[c]ourts should protect against deliberate wrongdoing by prosecutors, and in those rare cases where it arises, overzealous advocacy that distorts the factfinding function of a criminal trial," they "should be hesitant, absent a strong showing by the defense, to determine that the Government has engaged in misconduct."  Id.

To show that the prosecution has violated her compulsory process, a defendant "must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to h[er] defense."  United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).  Evidence is material "only if there is a reasonable likelihood that the testimony could

have affected the judgment of the trier of fact" with a "probability sufficient to undermine confidence in the outcome." Mills, 956 F.2d at 446 (first quoting Valenzuela-Bernal, 458 U.S. at 874; then quoting United States v. Bagley, 473 U.S. 667, 681 (1985)).

Courts have held that prosecutorial conduct directed at discouraging defense witnesses from testifying deprives a defendant of due process.   In United States v. Morrison, the Third Circuit held that the prosecutor's repeated warnings to the defense witness that she could be prosecuted and that her testimony could be used against her violated defendant's due process rights.   535 F.2d 223, 226-27 (3d Cir. 1976).   Defendant's girlfriend intended to testify that she, and not he, had been involved in the alleged crime.   Id. at 225.   It was agreed that before testifying, the court would instruct her of her rights and of the possibility that she could be charged as a juvenile in state court.   Id.   Thereafter, the prosecutor sent the witness warnings that she could be prosecuted if she testified, that her testimony could be used against her, and that she could be prosecuted for perjury.   Id.   He then subpoenaed her to his office and again stressed the dangers of testifying.   Id. at 225-26.   When she was called to testify, she refused to answer some questions on the grounds that her answers might incriminate her, depriving defendant of much of the evidence he had planned to present to the jury.   Id. at 226.

The Third Circuit held that the prosecutor's conduct denied defendant "a meaningful opportunity, at least on par with that of the prosecution to present a case in his favor through witnesses." Id. at 226-27 (citation and footnote omitted).   The Court relied on Webb v. Texas, 409 U.S. 95, 97-98 (1972) (per curiam), in which the Supreme Court held that a defendant's due process rights were violated when the trial judge threatened the single defense witness with perjury if he lied, "effectively drove that witness off the stand, and thus deprived [defendant] of due process of law." Id. at 228.   In doing so, the Third Circuit concluded that "where the

Government has prevented the defendant's witness from testifying freely before the jury, it cannot be held that the jury would not have believed the testimony or that the error is harmless." Id. The Court ordered that defendant be granted a new trial and if the witness invoked her Fifth Amendment right not to testify, a judgment of acquittal should be entered unless the government granted her use immunity for her testimony.  Id. at 228-29.

By contrast, in Buie v. Sullivan, the Second Circuit held that the government's arrest the day after the trial began of a defense witness prepared to provide exculpatory evidence did not amount to bad faith or violate defendant's Sixth Amendment rights.  923 F.2d 10, 12-13 (2d Cir. 1990).  An eyewitness had agreed to testify that defendant was not involved in the robbery, but the day after the trial began, the government arrested him and charged him as an accomplice.  Id. at 10-11.  Defendant called the witness to testify, but he invoked his Fifth Amendment privilege. Id.  Defendant argued that the arrest was motivated by the prosecutor's intent to interfere with the witness's exculpatory testimony and deprived him of his right to present a defense.  Id.

The court held that there was no evidence to conclude that the reason for the witness's arrest "was anything other than the prosecutor's determination of probable cause for believing that [he] had participated in the robbery."  Id. at 12.  The court stated that "[s]peculation such as that offered by [defendant] does not permit a determination of bad faith on the part of the prosecutor, much less a conclusion that the district court's finding of no bad faith was clearly erroneous."  Id. at 12-13.  "An investigative delay caused by a prosecutor's hesitancy to seek an indictment until he is persuaded he can successfully prosecute the suspect is reasonable and does not offend due process."  Id. at 13.  The timing of the arrest was not sufficient to establish a violation of defendant's rights.  Id.

In the instant case, Yu Xue has not carried her substantial burden of showing that the Government's decision to indict Gongda Xue was made with "the deliberate intention of distorting the judicial factfinding process."  See Herman, 589 F.2d at 1204.  Instead, the evidence shows that even before Yu Xue made it known that she intended to depose Gongda Xue, the Government was taking steps to gather additional information about Gongda Xue in preparation for an indictment against him and had even made the decision to seek an indictment from the grand jury.

As early as May 5, 2017, when the Government received the response to its MLAT request, it was gathering information to determine whether it should indict Gongda Xue.  (Doc. No. 182, Ex. A.)  Then, on January 23, 2018, the Government met with Scott Brown, General Counsel of Novartis, to discuss Gongda Xue.  (Id., Ex.)  Thereafter, in February 2018, Government counsel reached out to the necessary parties to arrange for the presentation of testimony to a grand jury for Gongda Xue's indictment.  Notably, on February 13, 2018, before the Government was informed that Yu Xue would be seeking a Rule 15 deposition of Gongda Xue, counsel for the Government emailed FBI case agent Haugen regarding his availability to testify before the grand jury on a Wednesday in March "to get Gongda indicted."  (Id., Ex. C.) And on February 26, 2018, Government counsel sent an email to Haugen confirming that March 28, 2018 was the date that he would testify.  (Id.)  That same day, Government counsel sent an email to the grand jury coordinator to schedule Gongda Xue's indictment for March 28, 2018 (id., Ex. D) and began to seek the necessary approvals for an indictment (id., Ex. E).

After each of these actions had been taken, on February 28, 2018, counsel for Yu Xue sent an email to Government counsel stating that Yu Xue would be seeking a Rule 15 deposition of Gongda Xue (id., Ex. F), and on March 5, 2018, the Motion to take the deposition was filed

(Doc. No. 161).  Thereafter, on March 28, 2018, an indictment was returned against Gongda Xue.

Although, on the surface, the return of Gongda Xue's indictment weeks after Defendants filed the Motion to take his deposition may appear questionable, a close analysis of the sequence of events does not establish that the Government acted with the "deliberate intention" of causing Gongda Xue not to testify.  See Buie, 923 F.2d at 13.  Instead, the evidence shows that on February 13, 2018, prior to being notified that Yu Xue would be seeking a deposition of Gongda Xue, the Government had made the decision to seek to indict Gongda Xue because Government counsel was attempting to schedule the FBI case agent's testimony before the grand jury "to get Gongda indicted" and to make all other arrangements for the indictment.  Even though the Government was aware of Yu Xue's desire to depose Gongda Xue when his indictment was returned, this does not undermine the fact that the Government has established to the Court's satisfaction that the decision to indict Gongda Xue was made before the Government knew of Yu Xue's desire to depose him.

There is insufficient evidence before the Court to conclude that the reason for the indictment was anything other than the Government's determination that it had enough evidence to charge Gongda Xue.  Significant investigation by the Government was done prior to Gongda Xue's indictment, and he was indicted based on the evidence against him.  Yu Xue's speculation about the reason for returning the indictment does not permit a finding that the Government intended to deprive her of the right to Gongda Xue's testimony.  See Buie, 923 F.2d at 12-13.  The timing of the indictment alone is insufficient to show that Yu Xue's due process rights were violated.

Finally, the Government did not engage in intimidation or threats to dissuade Gongda Xue from testifying.  <u>See</u> <u>Quinn</u>, 728 F.3d at 258 (quoting <u>Lambert</u>, 387 F.3d at 260).  Unlike the cases in which the government or even a court deliberately intimidated or threatened a defense witness to dissuade him from testifying, here the evidence does not show that the Government's conduct was aimed at keeping Gongda Xue from being deposed or testifying at trial.  Gongda Xue's decision not to testify after being indicted was his alone to make with the advice of his counsel.  That he chose not to do so was not a result of any intimidation or threats on the part of the Government.  His choice was made freely based on the information he had in his possession.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Yu Xue's Motion to Dismiss (Doc. No. 181) will be denied.  An appropriate Order follows.